Charles Howard WEST, Petitioner–Appellee,

v.

William SEABOLD, Warden, Respondent–Appellant.

No. 95–5148.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1995.

Decided Jan. 9, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 22, 1996.

---

C. Fred Partin (argued and briefed), Louisville, KY, for Charles Howard West.

Joseph R. Johnson, Asst. Atty. Gen. (argued and briefed), Office of the Atty. Gen., Frankfort, KY, for William Seabold.

Before: MERRITT, Chief Judge; RYAN, Circuit Judge; CLELAND, District Judge.*

RYAN, J., delivered the opinion of the court, in which CLELAND, D.J., joined. MERRITT, C.J. (pp. 85–87), delivered a separate concurring opinion.

RYAN, Circuit Judge.

Respondent, William Seabold, appeals a judgment granting Charles Howard West's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. We reverse.

## I.

The petitioner, Charles Howard West, was convicted in the Henry Circuit Court for the Commonwealth of Kentucky of the murder of James Schira and sentenced to 22 years imprisonment. He appealed to the Kentucky Supreme Court, asserting denial of due process of law because of alleged prosecutorial misconduct. The Kentucky Supreme Court recognized that the prosecutor "delivered a barrage of vilification, misleading innuendo, and outright deception," but affirmed the petitioner's conviction, concluding that under Kentucky Rule of Criminal Procedure 9.22 and case law, defense counsel's failure to move for a mistrial, after having objected to some of the improper remarks, indicated that the petitioner was satisfied with the relief that had been granted. The Kentucky Supreme Court declined to review the errors on direct appeal other than for palpable error because of the procedural default in failing to move for a mistrial.

Petitioner next filed a motion to vacate judgment, arguing that defense counsel's failure to move for a mistrial constituted ineffective assistance of counsel. The Henry Circuit Court overruled petitioner's motion, finding that the issue of ineffective assistance for failure to object had already been disposed of on direct appeal when the Kentucky Supreme Court drew the conclusion that counsel's failure to move for a mistrial was a deliberate tactical decision. On appeal, the Kentucky Court of Appeals affirmed the denial of petitioner's motion, and the Kentucky Supreme Court denied discretionary review.

In January 1994, the petitioner filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of Kentucky, alleging that he was denied due process by the prosecutor's numerous improper remarks in closing argument and that he was denied effective assistance of counsel, citing his counsel's failure to object to some of the prosecutor's misconduct and failure to move for a mistrial. The magistrate judge to whom the case was assigned recommended that the petition for a writ of *habeas corpus* be granted, and the respondent filed timely objections. The district court overruled those objections and adopted the magistrate judge's recommendation in granting the petition for a writ of *habeas corpus*, with directions that petitioner be retried within 120 days.

The district court concluded that "the prosecutorial misconduct was so egregious that … defense counsel's failure to object to many of the remarks and failure to move for a mistrial was prejudicial error of constitutional proportion." The district court further concluded that the prosecutor's improper remarks misled the jury, prejudiced the accused, were extensive, were deliberately placed before the jury, and were introduced into a case in which the strength of the evidence against the petitioner was less than overwhelming, in that all the evidence in favor of conviction was circumstantial.

---

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

84

## II.

■ This court reviews a district court's decision in a *habeas corpus* proceeding *de novo*. *Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 822, 133 L.Ed.2d 765 (1996). The court gives complete deference to state court findings of historical fact unless they are clearly erroneous. *Id.*

■ Kentucky Rule of Criminal Procedure 9.22 "imposes upon a party the duty to make known to the court the action he desires the court to take or his objection to the action of the court...." *West v. Commonwealth of Kentucky,* 780 S.W.2d 600, 602 (Ky.1989) (internal quotation marks omitted). The state court made clear that "[i]f a party claims entitlement to a mistrial, he must timely ask the court to grant him such relief." *Id.* A federal *habeas* petitioner who has failed to comply with a state's rule requiring contemporaneous objection at trial ordinarily must show "cause" for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted claim. *Wainwright v. Sykes,* 433 U.S. 72, 87–88, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). The district court found that ineffective assistance of counsel was the cause of West's procedural default. "Ordinary" attorney error does not constitute cause; however, error that amounts to the ineffective assistance of counsel under the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is "cause" for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). To meet this test, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell,* 506 U.S. 364, 368–71, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

had no effect on the [*ultimate* ] judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, *quoted in Smith v. Jago,* 888 F.2d 399, 404–05 (6th Cir.1989), *cert. denied,* 495 U.S. 961, 110 S.Ct. 2572, 109 L.Ed.2d 754 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.1992) (*en banc* ), *cert. denied,* — U.S. —, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

■ Both the district court and this court must apply a presumption of correctness to state court findings of fact for *habeas corpus* purposes. 28 U.S.C. § 2254(d). However, conclusions of law are not presumed to be correct. *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 169, 102 L.Ed.2d 139 (1988). We have held that "[s]tate court determinations which are mixed questions of fact and law or pure questions of law are not governed by Section 2254(d)" and that "state court application[s] of constitutional legal principles ... are freely reviewable by a federal court in a habeas action." *Cain v. Smith,* 686 F.2d 374, 379–80 (6th Cir.1982) (footnote omitted). The issue of ineffective assistance of counsel presents a mixed question of law and fact, though any underlying historical facts found by state courts are presumed correct. *Flieger v. Delo,* 16 F.3d 878, 886 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994).

## III.

■ The Kentucky Supreme Court noted that every objection by defense counsel was sustained and that the petitioner did not move for a mistrial. "Certainly the record does not suggest that [the petitioner] was unaware of the prejudicial effect of the pros-

ecutor's remarks and strongly suggests that defense counsel's failure to move for a mistrial was a tactical decision." *West*, 780 S.W.2d at 603. The court was not asked to examine, and did not examine, whether the failure of counsel to move for a mistrial constituted ineffective assistance of counsel; the supreme court's determination that the record "strongly suggests that defense counsel's failure to move for a mistrial was a tactical decision" is not a finding that counsel was necessarily effective. But the supreme court did find, as a factual matter, that counsel was aware of the misconduct and made a conscious decision to proceed with the jury as impaneled. This finding is entitled to a presumption of correctness. We cannot find that counsel's strategy constituted ineffective assistance of counsel. The petitioner had retained counsel, and his attorneys made many objections, which were sustained. Although the egregious conduct of the prosecutor would be cause for concern to counsel, a competent attorney might, for a number of reasons, decide to submit the case to the impaneled jury despite the misconduct. The state's case was poorly presented; the prosecutor went so far as to change theories in closing argument. A competent attorney could conclude that the prosecutor's conduct might have thoroughly offended the jurors to the petitioner's advantage. He might also conclude that a declaration of a mistrial would only force the petitioner to endure the expense of a second trial with the added risk that the state, with full knowledge of the defense's case and with a more accomplished prosecutor, would present its case more forcefully and effectively and heighten the chance of conviction or increase the length of the probable sentence. We are in no position, on this record, to second-guess defense counsel's conduct as not being within the range of reasonable professional assistance.

## IV.

We find that there was no cause for the procedural default, and therefore **REVERSE**.

MERRITT, Chief Judge, concurring.

Defendant Charles West lived with Alice Schira, the victim's mother, on her horse farm in Kentucky. Defendant moved in with Ms. Schira and the victim, her son Jimmy Schira, several months before Defendant West killed Jimmy Schira, allegedly in self-defense. Jimmy Schira was 22 years old, had numerous emotional and drug problems and suffered from mood swings, depression, including suicide attempts, and violent behavior. Due to this violent behavior, his mother, Alice, decided Jimmy must leave the farm. Shortly before Jimmy died, Alice had made arrangements for Jimmy to move to Colorado where he had lived previously. On the day he died, Jimmy asked his girlfriend to marry him and move to Colorado with him. She declined.

That evening, Defendant maintains that as he sat with Jimmy in the kitchen, Jimmy threatened to kill Alice and Defendant. Alice was upstairs in her bedroom. Defendant then ran upstairs to the bedroom he shared with Alice, told her that Jimmy threatened to shoot them and retrieved a gun that he kept in the bedroom. When Defendant returned to the kitchen, he testified that Jimmy pulled a gun on him. Defendant then fired three shots, two of which hit Jimmy and killed him. One shot entered Jimmy's jaw behind his left ear and came out his nose. The other entered his left shoulder blade. A third entered the kitchen window frame. Jimmy managed to leave the kitchen before he died in the yard. A fully loaded gun was found near where Jimmy was initially shot in the kitchen.

The medical examiner testified that he could not say conclusively how Defendant and the victim were situated when the shooting occurred. The examiner testified that it is possible that Jimmy was facing toward petitioner with his head turned to the right so that the first shot entered his jaw/neck area and the force of the first shot spun him around so that the second shot entered his back. The other possibility is that Jimmy was shot from behind while his back was turned from Defendant. There is also discrepancy in the testimony as to the timing of the shots, with the defendant stating that he shot all three shots rapidly in succession and Alice claiming she heard one shot, a hesi-

tation and then two more shots. There is also some conflict as to whether the loaded, but unfired, gun found near where Jimmy was first shot could have been "planted" by Defendant. Fingerprint evidence was inconclusive.

Defendant was charged with "intentional murder" and claimed self-defense. At trial, the prosecutor made numerous provocative statements during closing. Some of the harshest examples delivered during the prosecutor's closing argument include:

[Defendant West] is a back of the track stud to take care of [Alice Schira] and to take care of the farm and to work and perform the duties.

(Tr. Trans. at 1105, Joint Appendix at 414 [1]) And:

[Defendant's lawyer] makes a big to do that the indictment don't [sic] mean a thing. Well, it's not a good conduct medal.

(Tr. Trans. at 1083, J.A. at 393)

The prosecutor also attempted to put forth a theory, for which he had introduced no direct evidence during trial, that Defendant and the victim's mother conspired to kill the victim, implying that Defendant's motive was to become the beneficiary of Alice Schira's will upon the death of her son. The prosecutor mentioned Alice Schira, who had not been charged with a crime, numerous times throughout his closing in an effort to paint her as an uncaring, bad mother who loved her boyfriend [Defendant West] more than she loved her son and wanted her son out of her way. In this vein the prosecutor stated,

[T]his was a planned, framed murder on the part of Charlie West and they had talked, Alice Schira.

(Tr. Trans. at 1080, J.A. at 390) And:

This is a deliberate, intentional murder set-up by these people.... [T]his case is one of ... intentional murder to benefit Charles West and Alice Schira, a convicted felon [Defendant] and a person married to a detective who knows how the methods of

the police work. [Alice Schira's late husband had been a law enforcement officer.]

(Tr. Trans. at 1113, J.A. at 422) And:

[Defendant West] can have the will changed any time Alice wants it changed, and that's what he will work for if he is not convicted in this case.

(Tr. Trans. at 1081, J.A. at 391) The prosecutor also implied that the victim's mother had something to hide because she called her lawyer right after the shooting:

Why did she need a lawyer? Innocent people don't need lawyers. Justice will prevail.

(Tr. Trans. at 1102, page missing from Joint Appendix) Defense counsel objected and the trial court sustained the objection and admonished the jury. The prosecutor also attempted to mislead the jury about the victim's mother by pointing out that she had not been in the courtroom during the entire trial even though the prosecutor knew that Alice Schira had been banned from the courtroom subject to a witness separation order:

This is the only murder case I can remember when no one of the family, no girlfriend, mother, father, or any person sit [sic] there in the interest of the victim that was shot down.... [N]obody caring enough about [the victim] to be here to look after his interest.... Another thing about Alice, she hasn't been in this courtroom one day except when she testified to sit with the Commonwealth or to sit with her lover.

(Tr. Trans. at 1079–81, 1105, J.A. at 389–91, 414) Defense counsel objected, the objections were sustained and the trial court explained to the jury that Alice Schira was banned from the courtroom by court order.

The prosecutor also made improper references to the defense lawyers when he stated:

I'm a country lawyer and I can't do as good as these good high priced defense lawyers....

(Tr. Trans. at 1117, J.A. at 426) When defense counsel objected and the judge sustained the objection the prosecutor retorted

---

1. References to the Joint Appendix filed in this case will be cited herein as "J.A. at ___."

to the trial judge, "I could call them cheap but I won't." *Id.*

In sum, the prosecutor's closing argument was filled with overstatements and irrelevant or erroneous innuendos from start to finish. Defendant's counsel did not move for a mistrial. The jury found Defendant guilty of "intentional murder" and he was sentenced to 22 years imprisonment.

Although I agree with the Court's decision, I do not believe that the statements required the trial court to grant a mistrial even if defense counsel had made a mistrial motion. The prosecutor made wild statements in violation of Kentucky's rules and the trial judge so informed the jury, but the comments were not so egregious as to violate the Due Process Clause.