Richard CONE, Petitioner–Appellant,

v.

Jimmy STEGALL, Warden,
Respondent–Appellee.

No. 99–2183.

United States Court of Appeals,
Sixth Circuit.

June 29, 2001.

Before NORRIS and COLE, Circuit Judges; HOLSCHUH, District Judge.*

OPINION

COLE, Circuit Judge.

Petitioner–Appellant Richard Cone appeals the district court's denial of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. In December 1993, Cone was convicted by a jury of assault with intent to do great bodily harm less than murder in violation of Mich. Comp. Laws §§ 750.84 and 28.279, and was sentenced to a prison term of 160 to 240 months. The only issue before us on appeal is whether defense counsel's failure to request a jury instruction on the defense of intoxication resulted in ineffective assistance of counsel in violation of Cone's Sixth Amendment rights. We hold that it did not. For the reasons that follow, we AFFIRM the judgment of the district court.

BACKGROUND

On the evening of September 11, 1993, Cone and his girlfriend, Serena Buckingham, got into a fight while at Cone's trailer. Cone had been drinking heavily and assaulted Buckingham with his fists and two butcher knives. After receiving numerous cuts all over her body, Buckingham escaped and called the police.

Cone was charged with assault with intent to murder under Mich. Comp. Laws §§ 750.83 and 28.278. The only issue contested at trial was Cone's state of intoxication on the night of the assault. The

* The Honorable John D. Holschuh, United States District Court for the Southern District of Ohio, sitting by designation.

government called Buckingham, who testified that she saw Cone drink two forty-ounce beers while she was with him that evening and that he smelled of alcohol. She testified that she had seen Cone drink large quantities of alcohol in the past without becoming drunk and that although Cone clearly had been drinking that night, he was not so drunk that he was "falling over his feet." Government witnesses Jerry Derosia and David Mailloux, deputies who responded to the scene that evening, testified that although Cone exhibited signs of intoxication, he had no problem walking and talking, and he responded appropriately to verbal commands and questions. The defense called no witnesses but cross-examined the government witnesses with respect to Cone's state of intoxication on the evening in question.

The government prepared the jury instructions, which were taken from the Michigan Standard Criminal Jury Instructions. All the charges against Cone were specific intent crimes. The jury was instructed on assault with intent to murder and on the lesser included offenses of assault with intent to commit great bodily harm less than murder, felonious assault, aggravated assault, and assault and battery. Although the standard instruction on the defense of intoxication was not included, defense counsel argued in his closing statement that Cone was too intoxicated to form the specific intent necessary to be convicted of the crimes charged. Cone was acquitted on the charge of assault with intent to murder and was convicted of the lesser included offense of assault with intent to do great bodily harm less than murder. Cone then pleaded guilty as a third felony offender based on two prior convictions for malicious destruction of property.

Following his state post-conviction proceedings, Cone filed a petition for writ of habeas corpus in district court on May 13, 1997, which was dismissed without prejudice by order dated January 30, 1998. Cone filed the instant habeas petition on November 6, 1998, which the district court denied on September 23, 1999. Cone applied to the district court for a certificate of appealability with respect to two issues: (1) ineffective assistance of counsel for failure to request a jury instruction on intoxication, the only defense theory advocated at trial; and (2) trial error for failure to appoint another attorney after Cone expressed dissatisfaction with appointed counsel. The district court granted Cone's application with respect to the first issue but denied it with respect to the second. Cone appealed the district court's denial with respect to the second issue, and this court affirmed the denial by order dated February 7, 2000. This timely appeal follows.

## DISCUSSION

We review a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *See Lucas v. O'Dea,* 179 F.3d 412, 416 (6th Cir.1999). Because Cone filed his habeas petition on November 6, 1998, review of the state court's decision is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). As amended, 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court recently explained that an "unreasonable application" of clearly established federal law established by Supreme Court precedent occurs if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *See id.* at 407–08, 120 S.Ct. 1495. A state court decision can be "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result. *See Machacek v. Hofbauer*, 213 F.3d 947, 952–53 (6th Cir. May 26, 2000) (citing *Williams*, 529 U .S. at 407, 120 S.Ct. 1495).

### Ineffective Assistance of Counsel

▆ The standard by which a Sixth Amendment ineffective assistance of counsel claim is reviewed is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective representation, the claimant must establish that, in light of all the circumstances, trial counsel's performance fell below an objective standard of reasonableness and that the resulting prejudice deprived him of a fair trial. *See Jones v. United States*, 161 F.3d 397, 400 (6th Cir.1998) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). While we review the district court's findings of

fact pertinent to this question for clear error, the performance and prejudice components of the *Strickland* test are mixed questions of law and fact subject to de novo review. *See Sims v. Livesay*, 970 F.2d 1575, 1579 (6th Cir.1992) (citing *Strickland*, 466 U.S. at 698, 104 S.Ct. 2052).

▆ The objective standard of reasonableness is a "highly deferential" standard that includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052. The assistance required is not that of the most astute counsel, but rather, "reasonably effective assistance." *Id.* at 687, 104 S.Ct. 2052. The *Strickland* Court recognized that we must apply "a heavy measure of deference to counsel's judgments" and that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. 690–91, 104 S.Ct. 2052.

▆ To prove the prejudice prong of an ineffective assistance claim, the claimant must show that but for counsel's errors, the results of the proceedings would have been different. *See Jones*, 161 F.3d at 400 (citing *Stickland*, 466 U.S. at 694, 104 S.Ct. 2052). The Supreme Court stated in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993):

[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Id.* at 369–70, 113 S.Ct. 838 (footnote omitted). "The question for reviewing courts

is whether counsel's errors have likely undermined the reliability of, and confidence in, the result." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir.1996). Thus, the determinative issue is not whether the claimant's counsel was ineffective, but whether counsel was "so thoroughly ineffective that defeat was snatched from the jaws of victory." *Id.* (citing *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.1992) (en banc)) (internal quotation marks omitted).

■ Here, the district court held that defense counsel's failure to request a jury instruction on intoxication did not fall below the objective standard of reasonableness as enunciated in *Strickland.* In so finding, the district court noted that defense counsel's decision to omit an intoxication instruction may well have been a strategic decision insofar as the jury may have felt constrained to consider the defense in context of only those specific questions enumerated in the instruction.[1]

Cone argues on appeal that there could be no strategic benefit to not requesting an intoxication instruction, and therefore, trial counsel's failure in this regard fell below an objective standard of reasonableness. Cone argues that the trial court could have provided the standard intoxication instruction while omitting the specific questions enumerated. Cone focuses much of his argument on the following two points: (1) in his opening statement, trial counsel told the jury that they would be instructed on the intoxication defense; and (2) the trial court later told the jury, "If a lawyer says something different about the law, follow what I say." Cone argues that by virtue of these two statements, the jury drew a negative inference from the omission of an intoxication instruction and thus improperly concluded that it could not consider such a defense. Cone states, "[T]hat cautionary instruction, which the jury is presumed to have followed, coupled with the lack of the intoxication instruction, effectively told the jurors to disregard what the lawyers said about intoxication in their arguments and that there was no defense."

We disagree. The trial transcript indicates that the court gave an accurate statement of the law in its instructions to the jury with respect to the specific intent necessary for each of the crimes charged. Defense counsel cross-examined the victim and the police officers in an effort to establish that Cone was extremely intoxicated on the evening in question. He then presented the intoxication defense to the jury during his closing statement, pointing to all of the evidence showing that Cone was too intoxicated to form the specific intent necessary for each of the crimes charged. At no point did defense counsel "say something different about the law" such that the court's admonition would have had any relevance or effect. Rather, defense counsel's closing statement was consistent with the court's instructions, and an intoxication instruction would not have provided any additional defense not already available in the instructions read to the jury.

---

1. Michigan Standard Jury Instruction states in relevant part:

   (1) The defendant says that he could not have specifically intended to [state specific intent of appropriate crime charged] because he was intoxicated with alcohol or drugs.
   (2) You must decide whether the defendant's mind was so overcome by alcohol that he could not have formed that intent.

   It may help you to think about the following questions:
   (a) How did the defendant look at or near the time of the incident? How did he act? What did he say?
   (b) How much alcohol or drugs had he used?
   (c) Are there any other circumstances surrounding the incident that can help you decide?
   Mich. S.J.I.2d § 6.2.

██ Although we are not convinced that trial counsel's failure to request a jury instruction on the intoxication defense fell below an objective standard of reasonableness, even if it had, such an omission clearly did not prejudice Cone's defense within the meaning of *Strickland.* The record shows that the court properly instructed the jury as to its duty to determine that Cone possessed the specific intent necessary for a finding of guilt. Furthermore, there is ample evidence in the record supporting the jury's determination that, despite his intoxication on the evening in question, Cone was capable of forming, and did form, the specific intent necessary to be convicted of assault with intent to do great bodily harm less than murder. There simply is nothing in the record to persuade us that the results of the proceedings would have been different had the court provided an intoxication instruction to the jury, or that the lack of such an instruction "undermined the reliability of, and confidence in, the result" of the trial. *West v. Seabold,* 73 F.3d at 84. Because Cone has not shown that he received ineffective assistance of counsel, he is not entitled to habeas relief on that ground.

## CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.

HOLSCHUH, Circuit Judge, dissenting.

I respectfully dissent, because it is my opinion that in a case in which the sole defense is intoxication, trial counsel's failure to request an instruction on the defense of intoxication, after informing the jurors that the judge would give the jury such an instruction, constitutes ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## I.  *Standards of Review*

### A.  *Standard of Review By This Court*

Both before and after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), it is well established that this Court reviews a district court's denial of habeas corpus relief *de novo.*  *Herbert v. Billy,* 160 F.3d 1131, 1136 (6th Cir.1998); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997); *West v. Seabold,* 73 F.3d 81, 84 (6th Cir.1996); *Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995); *Sims v.. Livesay,* 970 F.2d 1575, 1579 (6th Cir.1992).

The AEDPA, however, did change the nature of that review. The district court must now apply the standard for review of the state court decision set forth in the Act at 28 U.S.C. § 2254(d), which provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Consequently, our review of the district court's decision requires that we determine, in this case, whether the district court's legal conclusion that the state court decision was not an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, was a correct conclusion. We make this determination by a *de novo*

review of the district court's decision which, in turn, requires that we apply the AEDPA standard to the state court decision.

With respect to the standard of review, the majority opinion states:

> While we review the district court's findings of fact pertinent to this question (ineffective assistance of counsel) for clear error, the performance and prejudice components of the *Strickland* test are mixed questions of law and fact subject to *de novo* review.
>
> *See* Majority opinion at 442 (citations omitted).

If this means that this court can review *de novo* the question of whether the defendant was deprived of the effective assistance of counsel, I respectfully disagree. The state court's decision regarding ineffective assistance of counsel is not, in my view, subject to a *de novo* review by either the district court or by the appellate court. Instead, the review by both courts is limited by the AEDPA to the question of whether the state court's decision regarding the claim of ineffective assistance of counsel is an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

### B. *Standard of Review by the District Court*

It should be noted that the district court, in referring to the AEDPA term "unreasonable application of clearly established Federal law," applied the "reasonable jurists" standard adopted by this Court in *Nevers v. Killinger*, 169 F.3d 352, 360 (6th Cir.), *cert. denied* 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999). This standard was subsequently rejected by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), in which the Court held that an application of federal law un-

der 28 U.S.C. § 2254(d) is unreasonable if it is "objectively unreasonable."

The question, therefore, is whether the decision of the Michigan state court was an unreasonable application of clearly established federal law, applying the objectively unreasonable standard of *Williams*. For the reasons set forth below, I believe that the state court did unreasonably apply clearly established federal law in its denial of defendant's claim of ineffective assistance of counsel, and that the district court, therefore, erred in its denial of habeas relief to the defendant.

### II. *The Michigan state court decision.*

The unpublished decision of the Michigan Court of Appeals reads, in its entirety, as follows:

> Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder, M.C.L. § 750.84; MSA 28.279, and thereafter pleaded guilty to habitual offender-third, M.C.L. § 769.11; MSA 28.1083. He was sentenced to 13–1/3 to 20 years' imprisonment, and now appeals as of right. We affirm.
>
> The trial court's failure to sua sponte give certain jury instructions does not require reversal. MCL 768.29; MSA 28.1052; *People v. Hendricks*, 446 Mich. 435, 521 N.W.2d 546 (1994). Defense counsel's failure to request those same instructions did not deny defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Pickens*, 446 Mich. 298, 521 N.W.2d 797 (1994).
>
> The trial court did not abuse its discretion by refusing to allow defendant to substitute unspecified counsel on the date of trial. *People v. Arquette*, 202 Mich.App. 227, 507 N.W.2d 824 (1993).

Defendant's sentence does not violate the principle of proportionality considering the circumstances surrounding the offense and the offender. *People v. Milbourn,* 435 Mich. 630, 461 N.W.2d 1 (1990).

Affirmed.[1]

It is apparent that while the state court was aware that the law to be applied was *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny, the court gave absolutely no explanation of how it applied that law to the facts of this case. The decision, in short, is devoid of any reasoning by the state court, a fact that on review is to be considered by the federal court.

As the Sixth Circuit has recognized:

By posing the question whether the state court's treatment was "unreasonable," § 2254(d)(1) requires federal court to take into account the care with which the state court considered the subject.

*See Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998) (quoting *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).

III. *The Merits of Petitioner's' Claim*

A. *The Failure to Request an Instruction on Intoxication*

It is undisputed that the defendant's only defense in this case was that he was so intoxicated at the time of his assault on his girlfriend that he could not have formed the specific intent to commit the offenses charged in the indictment, a critical element which the state had to prove beyond a reasonable doubt.

The importance of this defense—and the trial judge's instruction regarding this defense—was specifically brought to the attention of the jurors at the outset of the trial proceedings. During voir dire, the prospective jurors were so informed by the defendant's attorney:

THE COURT: All right. Okay, thank you, ladies and gentlemen. I am now going to open up the questioning to the attorneys. Do you have any questions I have not covered, Ms. Andrews, that you care to address?

MS. ANDREWS: No, Your Honor, I have no questions for the jury.

THE COURT: Mr. Horenstein, any questions I have not covered?

MR. HORENSTEIN: Just a couple. Ladies and gentlemen, the Judge, I believe there will be evidence that the defendant at the time this crime allegedly happened was highly intoxicated. And I believe the Judge will instruct you [on] the law that if he was so intoxicated that he couldn't form a specific intent to do this crime, whether or not you believe he did the act. The crime requires a—

THE COURT: All right, please no discussion of the law. This is voir dire. Do you have any factual questions about the jurors background?

MR. HORENSTEIN: No.

*See* J.A. at 52.

It is also not disputed that there was abundant evidence that defendant was intoxicated at the time of the assault. That evidence was summarized by appellant as follows:

On cross-examination, Buckingham said there was a strong smell of alcohol on his breath when she arrived. She acknowledged that he had had a drink-

---

**1.** Appeal to the Supreme Court of Michigan was denied. The Michigan Court of Appeals decision was not included in the Joint Appen-

dix, as it should have been, inasmuch as it is that court's opinion which is subject to review by the federal courts.

ing problem throughout the time she had known him and that he sometimes drank whiskey in addition to beer. At trial, she said that he was intoxicated, but not "highly" intoxicated, although she admitted that at the preliminary examination she had characterized him as "highly" intoxicated.

She told an Oakland County Sheriff that night that Cone had been acting "insane." She said he acted like that when he was highly intoxicated. She said that while she did not often drink a 40 ounce beer at one sitting, the one she drank that night had little effect on her. She said that night Cone's speech was slurred, and he was screaming, not making sense, and acting out of control.

Oakland County Sheriff's Deputy Jerry Lee Derosa was one of the deputies who responded to the call to Cone's sister's house. He found Cone sitting in a chair weeping and babbling incoherently. Derosa could not understand Cone's answer when he asked him what happened. *Id.* Derosa noted an odor of intoxicants on Cone.

Deputy David Mailloux who was also at Cone's sister's house testified that Cone was intoxicated. He said Cone was unsteady, had a strong odor of alcohol, slurred his speech, and was crying when he arrived.
*See* Appellant's Br. at 6–7 (internal citations omitted).

At the conclusion of the state's case-in-chief, the defendant's attorney made the following motion which the trial court denied:

MR. HORENSTEIN: Your Honor, for the record I'd make a motion for directed verdict. I think there's enough evidence of intoxication that the People have not established enough to go to the jury on the charge of Assault With Intent to Murder.

I move for directed verdict.

*See* J.A. at 99.

During closing argument the state's attorney not only referred to the defense of intoxication but also told the jury what he felt the law regarding this defense required:

The defense of intoxication under the law is more, certainly more, than just the person had been drinking. It is not merely one drink of forty ounce beer or the defendant drinks two forty ounce beers then necessarily he can't form an intent and that's an excuse, a defense.

No, he was not so intoxicated that he couldn't have formed the intent and that's the standard of the law. The intoxication as a defense, total defense to one's criminal liability so intoxicated they couldn't form the intent.
*See* J.A. at 106.

As the majority opinion correctly notes, the state's attorney prepared the jury instructions for the trial judge, but did not include any instruction dealing with the defense of intoxication. The instructions included an instruction that the offenses to be considered by the jury required proof of specific intent which was simply defined as proof "not only that the defendant did certain acts, but that he did the acts with the intent to cause a particular result." *See* J.A. at 125. There is absolutely no instruction describing the defense of intoxication as it relates to the required element of specific intent, and, indeed, the word "intoxication" is not even mentioned in the instructions to the jury.

The defendant's sole defense was intoxication; the jury had been told that the judge would instruct the jury on this defense; there was abundant evidence to support the defense; the defense attorney sought a directed verdict based on this defense, and the state's attorney had argued what the law required for this defense. Nevertheless, the defendant's at-

torney failed to request an instruction on this defense.

### B. *The Performance Prong of Strickland*

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983) is, of course, the "clearly established Federal law, as determined by the Supreme Court of the United States," which governs whether a defendant was deprived of the effective assistance of counsel. The performance prong of *Strickland* requires that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *See id.* at 688, 104 S.Ct. 2052. The test is fact specific. The Court must judge "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *See id.* at 690, 104 S.Ct. 2052. The scrutiny of counsel's performance is highly deferential and there is a "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy,' " *See id.* at 689, 104 S.Ct. 2052 (citing *Michael v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

The district court believed that the defendant's attorney's "decision to omit the intoxication instruction may have been a strategic decision." *See* J.A. at 36. The problem with this conclusion is twofold. First, there is absolutely no evidence that the defense attorney made a conscious decision not to request a jury instruction on the defense of intoxication. The failure to make such a request was as likely the result of carelessness in reviewing the proposed instructions as it was the result of any conscious decision on the part of counsel to not request the omitted instruction. Second, and more obvious, the failure to request the instruction was clearly *not* a matter of trial strategy. The same attorney who told the jury that the judge would give them such an instruction would hardly

decide as a matter of trial strategy that such an instruction should not be given. As the court said in *United States v. Span,* 75 F.3d 1383, 1389–90 (9th Cir.1996), "the label of 'trial strategy' does not automatically immunize an attorney's performance from sixth amendment challenges," (quoting *Kellogg v. Scurr,* 741 F.2d 1099, 1102 (8th Cir.1984)) (internal quotations and citations omitted).

I agree with the majority opinion that the trial judge's statement to the jury that "If a lawyer says something different about the law, follow what I say," would not itself cause the jury to draw an inference that intoxication was not a defense. The lawyers did not say something about the law that was in conflict with what the court said in its instructions. The problem, however, is not what the court said about the law; it is what the court *failed* to say about the law—the court's failure to give the jury an instruction concerning the law to be applied when the defense, in this case the sole defense, was intoxication. If defendant's attorney had requested such an instruction, as he clearly, in my view, should have done, a refusal to give it would certainly have been viewed as prejudicial error.

I disagree with the majority opinion's conclusion that the failure of defendant's attorney to request an instruction on the defense of intoxication did not fall below *Strickland*'s objective standard of reasonableness. In my opinion it did. Even in an ordinary case, the failure of defense counsel to request an instruction on the defense theory of the case would be highly questionable, but under the particular facts and circumstances of this case it was an egregious failure because of defense counsel's statement to the jury that such an instruction *would* be given to them by the judge.

## C. *The Prejudice Prong of Strickland*

Under the second prong of *Strickland,* the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. It is not necessary, however, to show that the errors of counsel determined the outcome. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694, 104 S.Ct. 2052.

The majority finds that the petitioner in this case was not prejudiced by his counsel's failure to request an instruction on the defense of intoxication primarily because there was "ample evidence in the record supporting the jury's determination that, despite his intoxication on the evening in question, Cone was capable of forming and did form, the specific intent necessary to be convicted of assault with intent to do great bodily harm less than murder." *See* Majority opinion at 444. I disagree with the characterization of the state's evidence being "ample." While the record may show sufficient evidence to deny the defendant's motion for a directed verdict, the defendant's evidence of intoxication was extremely strong. Indeed, the state itself has admitted that "Defense counsel presented a strong defense of intoxication." *See* Appellee's Br. at 13. The element of specific intent was critical in this case, and the burden was on the state to prove this element beyond a reasonable doubt. In view of the strong defense of intoxication, it was extremely important that the jury be instructed on the law applicable to this defense. Neither a boilerplate instruction on specific intent nor the arguments of the attorneys can fill the gap created by this omission. This omission is "sufficient to undermine confidence in the outcome" and satisfies the prejudice prong of *Strickland.*

As the Supreme Court said in *Strickland:*

A number of practical considerations are important for the application of the standards we have outlined. Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*See* 466 U.S. at 696, 104 S.Ct. 2052.

In my view, considering the facts and circumstances of this case, the result of the trial is indeed unreliable because of defense counsel's critical mistake in failing to have the jury instructed on the law applicable to the defense of intoxication, as he had previously assured the jury would be done.

## IV. *Conclusion*

For the reasons stated, I believe that petitioner was denied his right under the Counsel Clause of the Sixth Amendment to the effective assistance of counsel, and that the Michigan court of Appeals' decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

Accordingly, I would reverse the judgment of the district court and remand the case with instructions to grant the writ, and unless the state elects to retry petitioner within 60 days from the issuance of

the writ, petitioner should be released from custody.