Nathaniel HATCHETT, Petitioner,

v.

Pamela WITHROW, Respondent.

No. 01–70311.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 8, 2002.

Nathaniel Hatchett, Ionia, MI, Pro se.

Brenda E. Turner, Brad H. Beaver, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

### I. Introduction

Petitioner Nathaniel Hatchett, a state inmate currently incarcerated at the Michigan Reformatory in Ionia, Michigan, has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court denies the petition.

### II. Facts

Petitioner's conviction arises out of events that occurred on November 12, 1996. Annett Ventimiglia testified that, shortly after midnight on that date, she left her job at a K–Mart Store in Sterling Heights, Michigan, and, as she was getting into her car, she heard a male voice tell her to "sit down" and "move over, I have a gun." Ms. Ventimiglia attempted to close the car door, but the man prevented her from doing so. She, therefore, slid over to the passenger side of the front seat as directed and the assailant got into the driver's seat of the car.

Ms. Ventimiglia testified that the assailant ordered her to give him the car keys, threatening to kill her and stating that he had a gun. Ms. Ventimiglia testified that the assailant had his hand in his right hip pocket. She handed him the keys. As the assailant was driving from the parking lot, he ordered her to empty her purse and pockets onto the seat, which she did.

Ms. Ventimiglia testified that, as he was driving down the road, the assailant ordered her not to look at him or he would

---

**1.** Staff Attorney Mary Beth Collery provided quality research assistance.

kill her. She further testified that the assailant forced her to perform fellatio on him, then stopped the car and vaginally penetrated her. He next drove to a highway service drive, stopped the car, told Ms. Ventimiglia that this was her "lucky day" and directed her to get out of the car. Ms. Ventimiglia testified that she ran to a doughnut shop and called the Warren Police Department. Ms. Ventimiglia was then taken to the Macomb Hospital Center. Ms. Ventimiglia later identified Petitioner as her assailant.

On November 15, 1996, police officers located Ms. Ventimiglia's car at a service station in Detroit. Five individuals were in the car, two of whom matched Ms. Ventimiglia's description of her assailant. These two individuals, one of whom was Petitioner, were taken to the police station in Detroit. Petitioner was then transferred to the police station in Sterling Heights, where, after being advised of his rights, he gave a detailed confession.

A pubic hair was found in the victim's car. During the trial, Melinda Jackson, a laboratory scientist with the Michigan State Police testified, that the characteristics of that pubic hair were similar to a sample pubic hair taken from Petitioner. Seminal fluid was found on the victim's underwear. Ms. Jackson testified that DNA testing excluded Petitioner as a possible source of that fluid.

Petitioner presented three alibi witnesses in his defense, Christina Fisher, Robert Kiekens, and Jasper Bunch. Fisher testified that on November 11, 1996, at approximately 10:30 p.m., she and her friend Jasper Bunch drove over to Petitioner's house. Petitioner shared the house with Fisher's boyfriend, Robert Kiekens. Fisher testified that when they arrived at Petitioner's house, they honked the car horn. Petitioner came out, talked with them for ten or fifteen minutes, threw some rocks at their vehicle, and then went back into the house. Fisher testified that Kiekens came outside moments later and sat with Fisher and Bunch in the car until about 11:10. Fisher and Bunch remained in their vehicle outside Petitioner's house until about 1:30 the following morning. Fisher testified that she never saw Petitioner leave the house during that period.

Robert Kiekens testified that at approximately 10:45 on the night of November 11, 1996, Christina Fisher and Jasper Bunch came to the house he shared with Petitioner. Kiekens went outside and sat with Fisher and Bunch until approximately 11:30 p.m. Kiekens testified that, at that time, Petitioner's mother told him that Petitioner was at a house at Georgia and Iroquois in a stolen car. Petitioner's mother asked Kiekens to go get her son. Kiekens left the house and went to another house at the corner of Iroquois and Georgia, where he found Petitioner. Kiekens testified that he took Petitioner home. He and Petitioner returned home at approximately 12:15 a.m. Kiekens testified that he then got back into the vehicle with Fisher and Bunch. He stayed in the vehicle with them until approximately 1:30 a.m., when he went back into the house. Kiekens testified that Petitioner was in the house when he went back inside.

Next, Jasper Bunch testified that he and Fisher sat outside Petitioner's house between 10:00 p.m. and 1:30 a.m. on the night in question. He testified that, Kiekens came out and sat in the vehicle with them. At approximately 11:30 p.m., Petitioner came out of the house, began throwing rocks at the vehicle, and then ran away. Bunch testified that he did not see Petitioner again that evening.

### III.  *Procedural History*

Following a bench trial in Macomb County Circuit Court, Petitioner was convicted of carjacking, armed robbery, kid-

napping, and three counts of first-degree criminal sexual conduct. On April 13, 1998, he was sentenced to twenty-five to forty years imprisonment for the carjacking conviction, and each of the first-degree criminal sexual conduct convictions, and fifteen to forty years each for the armed robbery and kidnapping convictions, all to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. There was insufficient evidence to support the convictions of carjacking, armed robbery, CSC-first, and kidnapping where Defendant was excluded by DNA evidence, he established an alibi defense, and the perpetrator's identity was hidden, and conviction was based solely on Defendant's confession and reversal is required.

II. Reversal is required where there is insufficient evidence Defendant was armed to support the armed robbery conviction.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Hatchett*, 2000 WL 33419396 (Mich.Ct.App. May 19, 2000).

Petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented on direct review to the Michigan Court of Appeals, and the following additional claims:

I. Victim's in-court identification of defendant was improper.

II. The trial court improperly admitted a videotape into evidence that showed the abduction where the abductor's face was not visible.

The Michigan Supreme Court denied leave to appeal. *People v. Hatchett*, 619 N.W.2d 546 (Mich. Nov. 29, 2000).

On February 23, 2001, Petitioner filed the pending petition for a writ of habeas corpus, presenting the following claims:

I. There was insufficient evidence to support the convictions of carjacking, armed robbery, CSC-first, and kidnapping where Petitioner was excluded by DNA evidence, he established an alibi defense, and the perpetrator's identity was hidden, and conviction was based solely on defendant's confession.

II. Reversal is required where there is insufficient evidence defendant was armed to support the armed robbery conviction.

## IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 1521. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...

[A]n unreasonable application of federal law is different from an incorrect application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1521–22.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

### V. *Analysis*

Petitioner claims that he is entitled to habeas corpus relief because insufficient evidence was presented at trial to support his convictions for carjacking, armed robbery, CSC-first, and kidnapping. He claims that based upon the DNA evidence, his alibi defense, the fact that the perpetrator's identity was hidden, and that the conviction was based solely on defendant's confession, the evidence was insufficient to identify him as the perpetrator. In addition, he claims that insufficient evidence

**2.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

was presented to prove that the perpetrator was armed.

In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold,* 73 F.3d 81, 83 (6th Cir.1996), *cert. denied,* 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996).

■ First, the Court considers Petitioner's claim that insufficient evidence was presented to identify him as the perpetrator of these crimes. The last state court to issue a reasoned opinion addressing this claim, the Michigan Court of Appeals, held, in pertinent part:

Defendant contends that insufficient evidence was presented to establish his identity as the perpetrator in this case. When reviewing a challenge to the sufficiency of the evidence, this Court must examine the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt.... Circumstantial evidence and the reasonable inferences which arise from the evidence can con-

stitute satisfactory proof of the elements of the crime....

We find that the prosecution presented overwhelming evidence to sustain the trial court's finding that defendant was the person who committed these crimes. The victim testified that when the perpetrator first got into the car and demanded her car keys, she saw his face; that she was able to see the side of his face while he was driving; that she got a good look at him when he got on top of her and vaginally penetrated her; that streetlights illuminated most of the route driven by the perpetrator; and that she had no doubt that defendant was the person who committed these crimes. Defendant was driving the victim's vehicle at the time of his arrest, three days after the crimes were committed. Also, a pubic hair was found on the passenger-side floor of the victim's car. Testing indicated that the hair had characteristics matching those of defendant's known hair sample.

Additionally, defendant made a detailed confession to the investigating police officers admitting that he committed each of the charged crimes except robbery. Officer Williams and Detective Van Sice testified that defendant's information included information that only the perpetrator of the crimes would know..... Defendant's strikingly detailed confession is not merely a blanket admission; rather it is both fully corroborative of the victim's version of the events on the evening in question, and wholly consistent with the post-incident facts ascertained during the police investigation. Defendant contends that reasonable doubt was established by three alibi witnesses he presented. However, for various reasons the court found that the alibi witnesses were not credible. This Court will not interfere with [ ] such credibility determinations.... Defen-

dant additionally contends that his innocence was established by the results of a DNA analysis performed on semen found in the victim's vagina and underpants. However, although DNA analysis of the two identifiable genetic loci on the victim's vaginal swab and four identifiable loci on her underpants established that defendant was not the donor of that material, there are several plausible explanations for these results; for example, the donor might have been the victim's spouse. Furthermore, the victim told the treating nurse that defendant ejaculated "on" her, and she told the treating physician that she was only "fairly certain" that defendant ejaculated at all; therefore, it is altogether possible that defendant's semen would not be found in the victim's vagina or in her underpants.

In determining whether the evidence presented was sufficient to support a conviction, all conflicts in the evidence must be resolved in favor of the prosecution. . . . . We agree with the trial court that while the DNA test results introduce a slight doubt as to defendant's identity as the perpetrator of these crimes, in the face of the overwhelming evidence to the contrary these results do not rise to the level of reasonable doubt. Viewing the evidence in its entirety, we are in accord with the conclusion of the trial court that defendant was sufficiently identified.

*People v. Hatchett,* *1–2.

Petitioner's arguments fail to call into doubt any of the state court's findings of fact. Petitioner argues that the DNA evidence established that he was not the assailant. During trial, Melinda Jackson, a laboratory scientist with the Michigan State Police, testified that DNA testing conducted on seminal fluid found on the victim's underwear excluded Petitioner as a possible source of the fluid. The trial court judge considered this evidence in rendering a guilty verdict, and found that, given the overwhelming evidence against Petitioner, including Petitioner's detailed confession, the DNA evidence was insufficient to create a reasonable doubt. The Michigan Court of Appeals affirmed the conviction. This Court finds that the state court's decision affirming the conviction was not contrary to or an unreasonable application of *Jackson v. Virginia.*

■ Petitioner also claims that insufficient evidence was presented to establish that he was armed. In support of this claim, Petitioner argues that the victim never saw a weapon, nor did she see a bulge or anything resembling a weapon on any article of the Petitioner's clothing. The Michigan Court of Appeals rejected Petitioner's claim, holding, in pertinent part:

Defendant raises the additional specific argument that insufficient evidence was presented to establish that he was "armed" within the meaning of M.C.L. 750.529; M.S.A. 28.797, which requires that a robber be "armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon."

Defendant is correct in his assertion that a subjective belief that a weapon exists is insufficient to satisfy the armed robbery statute. . . . . However, in *People v. Jolly,* 442 Mich. 458, 502 N.W.2d 177 (1993), the Court stated:

an object pointing out from under a coat, together with statements threatening a victim with being shot, clearly satisfied the statutory definition of armed robbery. In such a case, there is evidence of actual possession of a weapon or article and the testimony regarding statements that, if believed, make clear an intent to convince the victim of the existence of such a weap-

on or article. [*Id.* at 468–69, 502 N.W.2d 177 (emphasis supplied by Michigan Court of Appeals) ].

. . . . .

The facts in the instant case are similar to those in *Jolly* with respect to defendant's "armed" status. The victim testified that defendant kept repeating that he had a gun and that he would kill her if she did not follow his instructions . . . . .

In addition, defendant's own statements to the police support a finding that he either had a gun or that he used his hand to induce the victim's belief that he was armed:

Q: What happened next, sir?

A: Gets out the blue four-door Citation, walks up to the car, white lady-where white lady was standing at. I push her in the car, forced her in the car. She tried to wrestle with me. I forced her in the car.

Q: *Did you imply that you had a weapon?*

A: *Yes, I did.*

Q: *What kind of weapon did you have?*

A: *I had a gun.* [emphasis supplied by Michigan Court of Appeals]

. . . . .

We conclude that sufficient evidence was presented from which the factfinder could reasonably determine that defendant was either actually "armed with a dangerous weapon," or that he was armed with "any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon."

*People v. Hatchett,* at *1–4.

Petitioner has not presented any evidence that the state court's findings of fact were erroneous. Therefore, according the state court's findings of fact a presumption of correctness, this Court concludes that

the Michigan Court of Appeals' decision did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thus, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

## VI. *Conclusion*

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.