Antonio GARCIA–DORANTES,
Petitioner,

v.

Millicent WARREN, Respondent.

Case No. 05–10172.

United States District Court,
E.D. Michigan,
Southern Division.

March 8, 2011.

Kenneth R. Sasse, Federal Defender, Federal Defender Office, Flint, MI, for Petitioner.

John S. Pallas, Michigan Department of Attorney General, Lansing, MI, for Respondent.

*OPINION AND ORDER DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS, AND REFERRING MATTER TO MAGISTRATE JUDGE FOR APPOINTMENT OF COUNSEL AND AN EVIDENTIARY HEARING ON REMAINING HABEAS CLAIM*

DAVID M. LAWSON, District Judge.

Petitioner Antonio Garcia–Dorantes, presently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions and sentences for second-degree murder and assault with intent to do great bodily harm less than murder. His amended petition contains seven claims, including improper admission of his pretrial statements, which he says were involuntary and taken in violation of *Miranda v. Arizona;* violation of his rights under the Confrontation Clause; denial of a fair trial due to prosecutorial misconduct; ineffective assistance of trial and appellate counsel; denial of due process and equal protection rights were infringed through a systematic exclusion of minority jurors in Kent county; and violation his Sixth Amendment right to a jury trial when the judge calculated his sentencing guidelines on the basis judge-found facts. Some of these claims are barred because of an independent state procedural rule with which the petitioner did not comply, and others lack merit. But the claim that minorities were systematically excluded from the petitioner's jury venire, thereby denying him a jury selected from a fair cross-section of the community, cannot be decided without an evidentiary hearing. Therefore, the Court will deny the petition in part and refer the remaining issue to the magistrate judge for appointment of counsel and an evidentiary hearing.

## I.

The petitioner was involved in a fight and stabbed two people, one fatally, in Grand Rapids, Michigan in the early morning hours of October 22, 2000. He was charged with open murder and assault with intent to do great bodily harm. Before trial, his attorney filed a motion to suppress statements the petitioner made while in custody, which was denied. Following a jury trial, he was convicted of second-degree murder and of assault with intent to do great bodily harm less than murder. He was sentenced to concurrent prison terms of fifteen to fifty years for murder and five to ten years for assault.

Jose Gomez, the homicide victim, died from a single stab wound to his upper chest, just beneath his collar bone. The medical examiner determined that Mr. Gomez had been intoxicated at the time of the fight, with a blood alcohol level of .31 percent. Although the medical examiner testified that most persons would be comatose with a blood alcohol level above .30 percent, he could not discount the possibility that Gomez could have attacked someone in a fight situation if he was a habitual drinker.

Manuel Garcia was the assault victim. He worked for Gomez. The two men had been drinking that night until about 4:00 a.m. They arrived at Gomez's house with a third companion, Gonzalo Toledo. When they drove up, the petitioner's truck was parked across the street. The petitioner testified that he thought the men were part of a gang and that they had tried to force him off the road during an earlier encounter that night.

The petitioner was standing outside of his truck. Gomez got out of Garcia's truck

and walked toward him, stating that he "did not want any problems"; he told the petitioner that he should leave or he would call the police. Garcia and Toledo then got out of Garcia's truck and approached the petitioner. Two other persons had also exited the petitioner's truck.

Garcia testified that when Gomez asked the men to leave, the petitioner replied "And if I don't want to?" and punched Gomez in the face. Gomez fell down, got up again and "threw himself" at the petitioner. Garcia acknowledged that he did not see which man started the fight. As Garcia attempted to break the fight up, he felt a cramp in his leg and later learned that he had been stabbed in the buttock. Garcia was also stabbed in the back of his neck. Garcia testified that the petitioner then threatened him with a bottle. Toledo testified that Gomez asked him to call the police. As Toledo did so, one of the petitioner's friends hit him in the head with a bottle. Toledo then heard Gomez say, "Let's go." Toledo observed petitioner get into his truck and leave the area, squealing his tires as he left. Gomez, Garcia, and Toledo got into Garcia's truck. Once inside, Garcia noticed that Gomez was very bloody. Garcia drove Gomez to the hospital. The petitioner and his companions had left the area already.

While driving Gomez to the hospital, Garcia passed the petitioner's truck when it stopped at a stop sign. When Garcia stopped at a red light, the petitioner drove up and crashed into the rear of Garcia's truck. Garcia continued driving but claimed that the petitioner crashed into his pickup truck two more times. Garcia drove to Gomez's brother's house, where they called the police and an ambulance.

Police responded to a dispatch of a shooting to an address on Rose Street. Upon arrival, emergency medical personnel informed the police that it had actually been a stabbing and Gomez had died. Of-ficers then received a dispatch for a "hit and run" and went to the petitioner's house. The police were informed that the petitioner had been involved in a hit and run accident. They noticed damage to the front of the petitioner's vehicle. They arrested the petitioner and his friend named Christian Diaz.

Police Officer John Riley testified that he interviewed the petitioner in the early morning hours of October 22, 2000. Riley ascertained that the petitioner spoke very little English. Riley testified that he was "pretty fluent" in Spanish, and he read the petitioner his *Miranda* rights in Spanish. Thereafter, the petitioner made two verbal statements. In his first statement, he blamed his wife for the truck crash and resulting damage. Later that afternoon, he made a second statement in which he admitted to having been involved in a fight. The petitioner told the police that he thought that Gomez and his friends were "gangbangers" who had threatened him earlier.

Detective Gregory Griffin was present when both statements were made. He testified that although he found no evidence that any of the persons involved in this altercation were gang members, he could not rule out that Gomez was a gang member.

The petitioner testified on his own behalf at trial, explaining that he was celebrating his daughter's birthday on October 21, 2000. He and his friends later left the party to go to his girlfriend's house, with whom he was having an extramarital affair. The petitioner parked in front of the house and went to the door. When there was no answer, he returned to his truck. It was then that he saw Garcia's truck arrive. The petitioner claimed that Garcia had tried to ram him with his truck earlier that day and had tried to run the petitioner off the road. He thought Gomez, Gar-

cia, and Toledo were gang members. According to the petitioner, a person from the victim's truck provoked the fight. When others joined in, he became scared and pulled a knife, thrusting it once as a person lunged at him. That man left and his friends followed. The petitioner claimed that when he went to drive away, the men pulled their truck in front of him and "locked" their brakes, causing the petitioner's vehicle to collide with their truck.

The petitioner went home and told his wife about the accident. He said his wife volunteered to tell the police that she had been driving because the petitioner was intoxicated at the time. The petitioner denied intending to harm anyone.

The petitioner's common-law wife, Anayeli Castellanos, testified that the petitioner woke her in the early morning hours of October 22, 2000 and informed her that someone had crashed into his truck. The petitioner demanded that she call the police to report the incident. The police arrived and arrested the petitioner. Castellanos admitted that she suggested that the petitioner inform the police that she had been driving because petitioner appeared scared and had been drinking.

After conviction and sentence, the petitioner filed a direct appeal in the Michigan Court of Appeals raising the following issues:

I. The Prosecutor's comments and argument, individually and cumulatively, constituted misconduct which deprived Mr. Garcia–Dorantes of his state and federal constitutional rights to due process of law and a fair trial.

II. Defendant-appellant was denied a fair trial by jury, in violation of his state and federal constitutional rights, where the Kent County system suffered a "glitch," excluding or underrepresenting minorities from the prospective jury panel.

III. Mr. Garcia–Dorantes is entitled to proper sentence credit, where an apparent mathematical error was not noticed at sentencing by the lower court, prosecutor or defense counsel.

In a late-filed *pro se* brief, the petitioner added the following argument:

Defendant-appellant['s] United States constitutional Sixth Amendment right to effective assistance of counsel was violated due to counsel failure to request a suppression hearing and motion that the statement be suppress due to defendant illegal arrest from which the statement was obtained.

The court of appeals found no error, but it did "remand for correction of defendant's judgment of sentence to properly reflect defendant's jail credit." *People v. Garcia–Dorantes*, No. 239306, 2003 WL 22416511 (Mich.Ct.App. Oct. 23, 2003).

The petitioner filed an application for leave to appeal in the state supreme court in which he raised yet another issue:

Did the trial court abuse its discretion when it change[d] the criteria's [sic] for probable cause to arrest set by the United States Supreme Court, and the Michigan Court of Appeals violating the defendant's appellant Fourth Amendment United States constitutional right to be free from illegal search and seizures

The application included his other appellate issues as well. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Garcia–Dorantes*, 470 Mich. 865, 680 N.W.2d 897 (2004) (table).

The petitioner then filed a petition for writ of habeas corpus in this Court on July 12, 2005. However, he asked that the petition be held in abeyance so he could return to state court to pursue post-conviction relief. The Court obliged, and the

petitioner's motion filed in the state trial court raised the following arguments:

I. The defendant's custodial statements to the police while the defendant was intoxicated and the authorities willful and unreasonable decision not to warn the defendant that he was under arrest rendered the *Miranda* waiver constitutionally invalid.

II. The defendant's Sixth Amendment rights [under the] Confrontation Clause were violated when the trial court allowed the prosecution to introduce accomplice's custodial testimonial statements, despite defense counsel's objections arguing such testimony was not subjected to cross-examination requirements.

III. The trial court's reasons for departure from the recommended sentencing range was clearly erroneous. Further this court's findings as reasons for sentencing violated the defendant's [rights under the] Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

IV. The defendant's Sixth Amendment right to the effective assistance of appellate counsel were violated thus satisfying the "cause" requirement to MCR 6.500, where his appellate counsel failed to raise the issues herein this motion.

The Kent County Circuit Court found that the petitioner's fourth claim was without merit and held it could not grant relief on the first three because they could have been raised, but were not, on direct appeal. *People v. Garcia–Dorantes,* No. 00–11664–FC (Kent Cnty. Cir. Ct. Nov. 10, 2005). In the same order, the trial court denied the petitioner's motion for an evidentiary hearing, although it is not apparent on this record why he asked for one. The Michigan Court of Appeals denied the petitioner's application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)," *People v. Garcia–Dorantes,* No. 269176 (Mich.Ct.App. Oct. 11, 2006), and the Michigan Supreme Court followed suit, *People v. Garcia–Dorantes,* 477 Mich. 1005, 726 N.W.2d 41 (2007) (table).

On February 15, 2007, 2007 WL 531094, this Court ordered the case reopened and allowed the petitioner to file an amended habeas petition, which he did. The petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. The petitioner's custodial statements to the police acquired while the petitioner was intoxicated and the authorities' willful and unreasonable decision not to warn the petitioner that he was under arrest rendered the *Miranda* waiver unconstitutionally invalid.

II. The petitioner's Sixth Amendment rights [under] the Confrontation Clause were violated when the trial court allowed the prosecution to introduce [an] accomplice's custodial testimonial statements, despite defense counsel's objections arguing such testimony was not subjected to cross-examination requirements.

III. The petitioner's state and federal due process rights to a fair trial were violated through flagrant prosecutorial misconduct by: (1) eliciting testimonial statements from its officers about alleged testimonial statements [of witnesses] given to them by material witnesses, (2) introducing testimonial statements of witnesses it never intended to produce for confrontation requirements, (3) withholding of evidence, (4) vouching for its witnesses while calling the defendant a liar, and (5) introducing the petitioner's custodial statements in violation of *Miranda* and [his] Fifth Amendment rights.

IV. The petitioner was constructively denied the effective assistance of counsel where his trial attorney failed to: (1) investigate matters mitigating to the case, (2) failed to object to the prosecution's flagrant misconduct, (3) failed to object to the improper jury selection when systematic exclusion of other qualified groups was evident, (4) failed to employ all the legal devices to submit the prosecution's case to meaningful testing, and (5) failed to follow up on exculpatory information given to him by the petitioner proving he was innocent of the alleged crime [of] which he was convicted.

V. The petitioner's Sixth Amendment right to the effective assistance of appellate counsel was violated where the appellate counsel failed to raise the issues raised herein in spite of the petitioner's explicit request; and when there is a dead-bang winning issue that would have warranted relief had the direct appeal be[en] timely perfected, the lawyer acts in a professionally unreasonable manner and the defendant is prejudiced.

VI. The petitioner was denied due process and equal protection ... by the systematic exclusion of qualified minority groups from prospective jury panels.

VII. The trial court's reasons for departure from the recommended sentencing range was clearly erroneous, and the court's reasons for departure for the sentence violated the petitioner's Sixth and Fourteenth Amendments to the United States Constitution. Therefore, Michigan's presumptive sentencing system is unconstitutional.

Am. Habeas Pet. at 18, 26, 37, 44, 52, 55, 59.

## II.

 The respondent argues that this Court may not reach many of the petitioner's arguments because he failed to preserve them by following established state procedures, which constitute an adequate and independent state law ground on which the state court properly denied relief. That defense is known as the doctrine of procedure default. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., make a contemporaneous objection or file a motion for a directed verdict. *See Simpson v. Sparkman,* 94 F.3d 199, 202–03 (6th Cir.1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Monzo v. Edwards,* 281 F.3d 568, 575–76 (6th Cir.2002). The respondent's argument is directed to all the issues the petitioner sought to preserve through his post-conviction motion and some of the grounds for alleging ineffective assistance of counsel and prosecutorial misconduct that were not mentioned on direct appeal. The argument has merit as to some of the petitioner's grounds for relief because they were never raised in the state courts.

On direct appeal, the petitioner raised a claim of prosecutorial misconduct involving

the prosecutor's use of the term "victims" to refer to his complaining witnesses, and the prosecutor's comment that if the jury failed to convict the petitioner, "it certainly would be an insult to the life of Jose Gomez." The petitioner did not raise any additional prosecutorial misconduct claims on direct appeal or in his post-conviction motion. The habeas petition contains additional arguments, such as the prosecutor referring to the petitioner as a liar, repeated references to Christian Diaz, introduction of the petitioner's wife's tape-recorded statement to the police, and the prosecutor's failure to turn certain evidence over to the petitioner until trial.

The only ineffective assistance of trial counsel claim the petitioner made on direct appeal is that his attorney did not move to suppress the petitioner's statements as the fruit of an illegal arrest until mid-trial. In his habeas petition, the petitioner adds these arguments: his lawyer failed to investigate matters that would have mitigated his conduct, object to the prosecutor's alleged misconduct, object to the alleged systematic exclusion of minority group members from his jury, obtain a crash expert, investigate whether the complainants and their companions actually were members of a gang, obtain sworn testimony of the petitioner's co-defendant Christian Diaz, and challenge Officer Riley's fluency in Spanish. He also raised ineffective assistance of appellate counsel, which, unlike these other arguments, was included in his post-conviction motion.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), govern this case. The AEDPA requires habeas petitioners to exhaust their state court remedies before seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b)(1)(A), (c). "Exhaustion"

means that a prisoner must " 'fairly present[ ]' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns.' " *Carter v. Bell*, 218 F.3d 581, 607 (6th Cir.2000) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir.1995)). The doctrine of exhaustion requires that a prosecutorial misconduct claim be presented to the state courts under the same theory as the prosecutorial misconduct claim being raised in the habeas petition. *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir.2004). Similarly, a habeas petitioner is required to present to the state courts "the same specific claims of ineffective assistance [of counsel] made out in the habeas petition." *Wyldes v. Hundley*, 69 F.3d 247, 253 (8th Cir.1995) (quoting *Tippitt v. Lockhart*, 903 F.2d 552, 554 (8th Cir.1990)); *see also Caver v. Straub*, 349 F.3d 340, 346–47 (6th Cir.2003) (citing *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987)). The petitioner has failed to present, and therefore to exhaust, the prosecutorial misconduct and ineffective assistance of counsel claims recited above.

The exhaustion requirements of 28 U.S.C. § 2254(b)(1)(A) and (c) do not bar review of claims where a petitioner no longer has state remedies available to him. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994) (holding that failure exhaust bars review only when the state still provides a remedy to exhaust). The petitioner already filed a post-conviction motion, and in the absence of a retroactive change in the law or newly discovered evidence (neither applies here), he has no further state remedies available to him. Mich. Ct. R. 6.502(G)(2); *see Mohn v. Bock*, 208 F.Supp.2d 796, 800–01 (E.D.Mich.2002). But "[t]he disappearance of state procedural remedies which evaporate with time will not completely excuse a prisoner's failure to avail himself of them . . . ." *Mohn*,

208 F.Supp.2d at 801. Instead, the Court must apply the procedural default rules to those claims.

 "The Court may review a prisoner's procedurally defaulted claims on the merits only if he shows cause for not raising his claims at all levels of state court review and prejudice, or that he is actually innocent of the crimes for which he was convicted." *Ibid.* (citing *Gray v. Netherland*, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), and *Hannah*, 49 F.3d at 1195–96, 1196 n. 3); *see also Coleman*, 501 U.S. at 750–51, 111 S.Ct. 2546; *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The petitioner has neither alleged nor established cause to excuse his procedural default on these claims. When cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir.1983). Nor has the petitioner shown actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (holding that the "miscarriage of justice" exception to the procedural default rule should apply only to cases where there is a likelihood of convicting a person who is actually innocent). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The petitioner has not done so here. In fact, the petitioner has pointed to no new evidence that the jury was not given. Therefore, his procedural default will not be excused on this ground.

The unexhausted portions of petitioner's third and fourth claims (prosecutorial misconduct and ineffective assistance of counsel) are barred by procedural default and do not warrant habeas relief.

The respondent also contends that the procedural default bars consideration of the petitioner's minority juror underrepresentation claim. That issue was raised on direct appeal, but the state court of appeals deemed the claim forfeited because the petitioner did interpose an objection to the jury venire in the trial court. Assuming without deciding that the state's rule requiring an objection to the jury array prior to the jury being sworn is a firmly-established state procedural rule that is regularly followed, *Warner v. United States*, 975 F.2d 1207, 1213–14 (6th Cir. 1992), the Court believes that there may be a basis to find both cause and prejudice that excuse his failure to abide by that rule.

 "A habeas petitioner shows 'cause' where he demonstrates that he failed to raise a constitutional issue because it was 'reasonably unknown to him' at the time." *Fautenberry v. Mitchell*, 515 F.3d 614, 629 (6th Cir.2008) (quoting *Amadeo v. Zant*, 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988)); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir.2002) ("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). The underrepresentation claim in this case is based on a computer error in the program that selected citizens for jury service. The computer system had inadvertently excluded nearly 75% of the county's 454,000 eligible jurors from potential jury pools since the spring of 2001. During this time period, the majority of jurors selected came from the suburbs of Grand Rapids, which racially is overwhelmingly white, to the exclusion of many minority citizens from Grand Rapids

proper. According to a July 30, 2002 article in *The Grand Rapids Press:*

> W. David Boehm, director of the county's computer technology department, explained that with only one quarter of the names and addresses to choose from, the computer automatically selected a correct proportion of jurors from each of the county's zip codes.
>
> Then, when the computer noticed the need for hundreds more jurors, it started selecting again from the top of the list—the lowest numbered zip codes that happen to serve the county's outlying areas. Filling out the needed number, the computer usually stopped at zip code 49505 and never again reached zip codes that cover the county's most dense population areas
>
> The result: more jurors than required were summoned from places such as Rockford and Cannon Township while fewer jurors than expected were summoned from inner-city Grand Rapids. Walker, Kentwood and parts of Wyoming also were underrepresented.
>
> "We clearly screwed up in that data entry but didn't know it," Boehm said.

*Parks v. Warren,* 574 F.Supp.2d 737, 740–41 (E.D.Mich.2008) (quoting Doug Guthrie & Kyla King, "Kent Admits Glitch in Jury Selection," *The Grand Rapids Press* (July 30, 2002)). This "glitch" has been discussed in other state appellate decisions, *see, e.g., People v. Bryant,* No. 241442, 2004 WL 513664, at *4 (Mich.Ct.App. Mar. 16, 2004); *People v. Perdue,* No. 242940, 2004 WL 257256, at *2 (Mich.Ct.App. Feb. 12, 2004); *People v. Barnes,* No. 244590, 2004 WL 1121901, at *2 (Mich.Ct.App. Jan. 15, 2004), and the State does not appear to take issue with these facts. The Michigan Court of Appeals has ordered a new trial in a case where the jury was selected under this defective system. *See People v. Bryant,* No. 280073, 289 Mich.App. 260, 271–75, 796 N.W.2d 135, 142–44, 2010 WL

2836119, at *5–6 (Mich.Ct.App. July 20, 2010) ("We find that the underrepresentation in this case was the result of the system by which juries in Kent County were selected because jurors from zip codes with small minority populations were routinely over selected and jurors from zip codes with large minority populations were routinely under selected because of a glitch or problem with the computer program that selected jurors. Because of this problem with the computer program, underrepresentation was inherent in the jury-selection process utilized in Kent County during the time that the computer glitch existed.").

In another habeas case arising from a Kent County trial that took place during the same period, this Court found cause for departing from the state procedural rule, explaining:

> The petitioner could not have known of Kent County's computer deviation at or before the time of jury selection. County officials did not even know about it, having discovered it several months after the petitioner's trial. "A habeas petitioner shows 'cause' where he demonstrates that he failed to raise a constitutional issue because it was 'reasonably unknown to him' at the time." *Fautenberry v. Mitchell,* 515 F.3d 614, 629 (6th Cir.2008) (quoting *Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988)); *see also Jamison v. Collins,* 291 F.3d 380, 388 (6th Cir.2002) ("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). The petitioner has established cause.

*Parks,* 574 F.Supp.2d at 744.

Other courts have not subscribed to that rationale. *See Burros v. Curtin,* No. 1:05cv701, 2009 WL 736066 (W.D.Mich. Mar. 18, 2009); *Wellborn v.*

*Berghuis,* No. 1:05–CV–346, 2009 WL 891708 (W.D.Mich. Mar. 31, 2009); *Davis v. Jones,* No. 1:04–cv–294, 2007 WL 2873041 (W.D.Mich. Sept. 26, 2007). The common theme of those cases is that the petitioner could not establish cause for not raising an objection to the jury venire at the time of trial because in each case, the petitioner was confronted by an all-white jury (or a final jury with one minority member); and although the cause (a computer error) may not have been apparent, the result should have piqued his awareness of the issue. The record in this case is not adequate either to apply or reject that rationale. Neither the respondent nor the petitioner has furnished information about the racial or ethnic composition of the jury venire or the petitioner's trial jury. Therefore, the Court cannot assess whether the petitioner should have been on notice of the defect, or whether it in fact resulted in actual underrepresentation. An evidentiary hearing will be required to settle those issues. Under the federal habeas statute, an evidentiary hearing on a habeas claim may be held if a petitioner is able to establish "a factual predicate [for his claim] that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii), (B); *see also Sawyer v. Hofbauer,* 299 F.3d 605, 610 (6th Cir.2002) (stating that an evidentiary hearing may be held when the petitioner "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing") (internal quotation marks omitted).

 The respondent also has alleged that consideration of other arguments is barred by the procedural default rule. However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). The cause and prejudice inquiry for the procedural default merges with an analysis of the merits of many of the petitioner's remaining claims; therefore, the Court will proceed to the merits. In addition, the petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim because state post-conviction review was the first opportunity that he had to raise this claim. *See Hicks v. Straub,* 377 F.3d 538, 558 n. 17 (6th Cir.2004).

### III.

The AEDPA "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir.1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520–21, 123 S.Ct. 2527 (quoting *Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a

factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

## A.

In the undefaulted portion of his prosecutorial misconduct claim, the petitioner contends that the prosecutor committed misconduct by repeatedly referring to the complaining witnesses as "victims" in his opening statement, and by arguing to the jury in closing argument that an acquittal would be an "insult to the life of Jose Gomez."

 "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir.2004) (citing *Bowling v. Parker,* 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.' " *Byrd v. Collins,* 209 F.3d 486, 529–30 (6th Cir.2000) (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.1997)). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515–16 (6th Cir.2006). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case," *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982), considering four factors:

"(1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial." *Bowling,* 344 F.3d at 512–13. The Court must focus on " 'the fairness of the trial, not the culpability of the prosecutor.' " *Pritchett,* 117 F.3d at 964 (quoting *Serra v. Mich. Dep't of Corr.,* 4 F.3d 1348, 1355 (6th Cir.1993)).

 The petitioner argues that by repeatedly referring to the complainants as "victims," the prosecutor unfairly invoked sympathy for them. In rejecting a similar claim, the Sixth Circuit has noted that "[t]he U.S. Supreme Court has held that there is no *per se* bar to the introduction of victim impact evidence and argument," even in the context of a non-capital case. *Byrd v. Collins,* 209 F.3d 486, 532 (6th Cir.2000) (citing *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)). The state court of appeals found no reversible error in the comments, and noted that the trial judge had instructed the jury that it was not to let sympathy or prejudice influence their decision. Trial Tr., Sept. 10, 2001, at 56. That determination was not contrary to, nor did it unreasonably apply, Supreme Court precedent. *See Millender v. Adams,* 187 F.Supp.2d 852, 875–76 (E.D.Mich.2002); *Welch v. Burke,* 49 F.Supp.2d 992, 1006 (E.D.Mich. 1999). The petitioner is not entitled to habeas relief on his third claim.

## B.

In the undefaulted portion of his fourth claim, the petitioner contends that he was deprived of effective assistance of trial counsel because his counsel failed to move until mid-trial to suppress his post-arrest

statements on the grounds that they were a fruit of an illegal arrest.

To establish the ineffective assistance of counsel, the petitioner must show that counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and counsel's deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins,* 539 U.S. at 521, 123 S.Ct. 2527 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. 2052.

 The Michigan Court of Appeals rejected the petitioner's claim on direct appeal based on the simple premise that raising the issue of the allegedly improper arrest mid-trial did not deprive the petitioner of a merits review of the argument. The trial court conducted an evidentiary hearing outside the presence of the jury, in which the court heard testimony and oral argument from counsel. At the conclusion of the hearing, the trial court determined that there was probable cause to arrest the petitioner, and therefore his arrest was not illegal. That holding reasonably applies *Strickland.* Even if trial counsel's tardy challenge to the arrest and ensuing statement amounted to defective performance, which is doubtful, no prejudice ensued. The petitioner is not entitled to habeas relief on this claim.

## C.

Next, the petitioner argues he did not knowingly or intelligently waive his constitutional rights prior to making his statement to the police, and his statements were involuntary. The state trial court held a pretrial evidentiary hearing on these claims on August 27 and 28, 2001. Prior to taking testimony, the trial court heard a portion of a tape recording of the petitioner's second interrogation. On this tape, Grand Rapids Police Detective Gregory Griffin informed the petitioner that the police wanted to talk to him a second time. Officer John Riley began reading petitioner his rights. The petitioner appears to have interjected that he remembered these rights from a session earlier that day. The petitioner testified at the hearing that he did not remember the morning of his arrest very well because he was intoxicated. He further stated that he had not slept the night before and did not understand his constitutional rights as they were told to him. The petitioner also stated that he was not given food or water while in police custody, nor was he able to sleep. The petitioner maintained that he did not speak any English and testified that if he

knew that he did not have to speak to the police, he would not have done so.

Detective Griffin testified that he and Officer Riley spoke to the petitioner in the morning of October 22, 2000. Detective Griffin identified Officer Riley as the person who was speaking Spanish to the petitioner on the tape recording of the interrogation, and Griffin testified that Riley read the *Miranda* advice-of-rights card to the petitioner in Spanish. Riley asked the petitioner if he understood his constitutional rights and had the petitioner sign the advice-of-rights card. Griffin testified that the first interview with the petitioner was conducted at about 10:32 a.m. and the second at 2:40 p.m. Griffin denied that the petitioner was deprived of food or water during his time in police custody. Griffin testified that the police normally offer coffee and water to suspects throughout the day, and that there are restroom facilities in the detention area, which the petitioner never asked to use. During cross-examination, the petitioner himself admitted that he never asked for any food or water while in police custody.

Detective Griffin testified that when he and Riley went to speak with the petitioner for the second time, they reminded the petitioner of his *Miranda* rights. Griffin indicated that the petitioner never expressed a desire to speak with an attorney. Griffin testified that the petitioner did not appear to have any difficulty understanding Riley's questions or answering them. Officer Riley also testified at the hearing and verified the Griffin's testimony. When Griffin told the petitioner that the police were investigating an incident that they wanted to talk to him about, Riley translated Griffin's comments into Spanish for the petitioner.

Riley also denied that the petitioner appeared intoxicated. He asserted that the petitioner was "stone cold sober," Evid.

Hr'g Tr., Aug. 28, 2001, at 10, and he did not smell any alcohol on the petitioner.

The trial court denied the petitioner's motion to suppress his statements, finding that the petitioner had been given his *Miranda* warnings prior to the first interview at 10:32 a.m. The trial court found that the required information was read from an advice-of-rights card in English but translated verbatim into Spanish by Riley. The trial court found that the petitioner affirmatively waived his rights. The judge acknowledged that the petitioner was not advised of all of his constitutional rights prior to making the second statement, but found that giving the *Miranda* rights at 10:32 that morning was sufficient to apprise the petitioner of his constitutional rights during interrogation the second time that day.

The trial court further found the petitioner's confession was voluntary. It noted that the questioning was not prolonged. The first interview was at 10:32 a.m., and the second at 2:40 p.m. The court found that there was no evidence that the petitioner was intoxicated at the time of the interview, and nothing on the tape recordings of the interviews suggested that the petitioner was intoxicated. There was no evidence that the petitioner had been abused or threatened. He was offered water and other beverages while at the police station. The police did not intentionally deprive the petitioner of sleep and did not arrest and question him in the early morning hours.

■■■ This Court presumes the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West,* 73 F.3d at 84 (stat-

ing that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous"). A habeas petitioner must rebut this presumption with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998); *see also* 28 U.S.C. § 2254(e)(1). Factual conclusions regarding voluntariness of the petitioner's statement to police, such as whether the police engaged in intimidation tactics, are also entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Likewise, the question whether a defendant understood his or her *Miranda* rights is subject to the presumption.

As noted above, the petitioner renews his challenge to the admissibility of his statements on two bases: that his *Miranda* rights were not given to him properly, and his statements were not voluntary. Under federal law, a confession obtained during custodial interrogation may be deemed unconstitutional on at least two grounds: that the confession was involuntary, *see Jackson v. Denno,* 378 U.S. 368, 376–77, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Colorado v. Connelly,* 479 U.S. 157, 163–65, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and that the detainee was not advised of his rights under *Miranda v. Arizona. See Dickerson v. United States,* 530 U.S. 428, 440, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

### 1.

■ Well-established tenets of constitutional law provide that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards ... [that] inform [an] accused person[ ] that ... he has a right to remain silent, that any statement he does make may be used as evidence against him, and

that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Id.* at 444, 475, 86 S.Ct. 1602.

■ The petitioner's primary contention is that he did not knowingly or intelligently waive his Fifth Amendment rights or voluntarily speak with the police because he was intoxicated. The state trial judge resolved that issue against the petitioner. Despite the petitioner's testimony to the contrary, there is evidence in the record that supports that finding, and the resolution of that fact issue is not unreasonable. Where the trial court was required to decide between two differing accounts of events and credited one version of events over the other, the denial of the petitioner's motion to suppress his confession does not warrant federal habeas relief. *See DePew v. Anderson,* 311 F.3d 742, 753 (6th Cir.2002).

■ The petitioner further contends that he did not knowingly waive his *Miranda* rights because at the time of the interview he did not understand English. "Although language barriers may inhibit a suspect's ability to knowingly and intelligently waive his *Miranda* rights, when a defendant is advised of his rights in his native tongue and claims to understand such rights, a valid waiver may be effectuated." *United States v. Hernandez,* 913 F.2d 1506, 1510 (10th Cir.1990); *see also United States v. Alaouie,* No. 90–1970, 1991 WL 144479, at *4 (6th Cir. Aug. 1, 1991) ("A language barrier is a factor to consider when determining the validity of a waiver. The determination is not difficult when the suspect is advised of his rights in a language that he understands." (citations omitted)). The translation of a

suspect's *Miranda* rights into his native language need not be a perfect one, as long as the defendant understands that he does not need to speak to police and any statement he makes may be used against him in a court of law. *United States v. Gonzales,* 749 F.2d 1329, 1335 (9th Cir. 1984) (waiver valid where the defendant appeared to understand the *Miranda* warnings administered by the officer in broken English).

█ Officer Riley testified that he was "pretty fluent" in Spanish and that he read the petitioner his *Miranda* rights in that language. The trial court found the petitioner understood his rights after Riley so advised him and he voluntarily agreed to waive them. That finding likewise is supported by evidence in the record and is a reasonable interpretation of the facts. The petitioner has presented no evidence to rebut this factual finding.

The petitioner contends further that the second statement that he made in the afternoon should have been suppressed because the police did not re-advise him of his *Miranda* rights. "'[T]he courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners.'" *United States v. Weekley,* 130 F.3d 747, 751 (6th Cir.1997) (quoting *United States v. Andaverde,* 64 F.3d 1305, 1312 (9th Cir.1995)). "In fact, a number of circuits have ruled that re-warning is not required simply because time has elapsed." *Ibid.*

█ In the present case, the petitioner was advised of his *Miranda* rights during his first interview at 10:32 a.m. He was again questioned by the police some four hours later. Before the second interview, the police began to advise petitioner of his *Miranda* rights again, but he stated that he remembered these rights. The four-hour interval between the two interviews did not render the petitioner's waiver of

his rights from the first interview invalid. *See Stumes v. Solem,* 752 F.2d 317, 320 (8th Cir.1985) (five-hour interval between the first and the second interview did not invalidate the suspect's waiver given before the first interview).

2.

█ The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A confession is considered involuntary if (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988). The ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller,* 474 U.S. at 112, 106 S.Ct. 445. Factors to consider include the presence or absence of police coercion (a "crucial element"), length of interrogation, location of interrogation, continuity of interrogation, the suspect's maturity and education, the suspect's physical condition and mental health, and whether the suspect was advised of his or her *Miranda* rights. *Withrow v. Williams,* 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167, 107 S.Ct. 515 (stating that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

█ A confession coerced by threats, violence, promises, or improper influence

is not voluntary. *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 42 L.Ed. 568 (1897); *see Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). "An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist." *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir.1994) (citing *Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976)).

■■■ The petitioner does not allege or show that the police engaged in any coercive activity. He mentions that he had not received any food or water during his police custody. However, he admitted at the evidentiary hearing that he did not ask for food or water while in police custody. The officers testified that the petitioner was offered beverages to drink. The trial court further found that the petitioner had been offered something to drink while at the police station. Moreover, the mere fact that the petitioner did not eat any breakfast would not in and of itself render his subsequent waiver of his rights to be involuntary, in the absence of any indication that he had not eaten dinner the night before. *See Wernert v. Arn,* 819 F.2d 613, 616 (6th Cir.1987) (finding that a defendant's concerns about her child, lack of sleep, ingestion of alcohol and drugs are not enough to invalidate the *Miranda* waiver).

Because there is no evidence that the petitioner was still intoxicated at the time that he spoke with the police and because the petitioner has not furnished any evidence of police coercion, he cannot show that his confession should have been suppressed merely because he claimed that he had drank alcohol the night before his arrest. *See Abela v. Martin,* 380 F.3d 915, 928 (6th Cir.2004) (holding that, in the absence of evidence of contemporaneous intoxication, the suspect's drinking on the night before the interrogation does not make a confession involuntary).

The petitioner has not established that his conviction was obtained with statements that were involuntary or obtained in violation of the interrogations rules of *Miranda v. Arizona.* He is not entitled to habeas relief based on these arguments.

**D.**

Next, the petitioner contends that the state court violated the Confrontation Clause when it allowed the prosecutor to introduce certain out-of-court statements. At the time of the petitioner's trial, the governing constitutional rule had been established by the Supreme Court in *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). For the purposes of section 2254(d)(1), the phrase "clearly established federal law" refers to the governing legal principles set forth by the United States Supreme Court at the time that the state court renders its decision. *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The Court rejected the *Roberts* rule, however, in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* was decided while the petitioner's case was pending on direct appeal, and therefore it applies to the present habeas petition as the "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See Onifer v. Tyszkiewicz,* 255 F.3d 313, 317–18 (6th Cir.2001) (holding that "[u]nder [the] AEDPA ... [a court's] inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final").

The petitioner's primary contention is that the prosecution introduced several

out-of-court statements made by his accomplice, Christian Diaz, without Diaz being present for cross-examination. Diaz was deported from the country before trial. The out-of-court statements were elicited during the testimony of Rafael Diaz, Christian Diaz's father.

■ In *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission of a nontestifying accomplice's confession at a joint trial violated the petitioner's right of confrontation even when the jury is instructed that the codefendant's confession could not be used to determine the petitioner's guilt or innocence. The Court held that the prejudice that may result from an accomplice's confession "cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." *Id.* at 132, 88 S.Ct. 1620 (internal quotation marks and citations omitted). However, the Supreme Court has also held that "[t]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). No *Bruton* violation occurs where the statement does not expressly implicate the defendant in the charged offense and is not "powerfully incriminating" on its face. *Id.* at 208, 107 S.Ct. 1702; *see also Vincent v. Parke*, 942 F.2d 989, 991 (6th Cir.1991) ("As *Bruton* and subsequent cases make clear, *e.g., Richardson*, 481 U.S. at 208, 107 S.Ct. 1702 ..., the extrajudicial statement must clearly implicate the defendant in order for there to be a violation of that defendant's sixth amendment right to confront adverse witnesses."). The Sixth Circuit has made clear that *Bruton* does not bar the use of a

redacted co-defendant's confession "even if the codefendant's confession becomes incriminating when linked with other evidence adduced at trial." *United States v. DiCarlantonio*, 870 F.2d 1058, 1062 (6th Cir.1989).

■ A review of Rafael Diaz's testimony amply demonstrates that no constitutional violation occurred. Mr. Diaz never related any statement made by Christian or anyone else. None of the testimony is attributed to Christian Diaz, and Rafael Diaz never incriminated the petitioner or even mentioned him by name. Therefore, the petitioner has failed to show that Rafael Diaz's testimony implicated his Confrontation Clause rights.

■ The petitioner further claims that the prosecution attempted to impeach him with the contents of Christian Diaz's custodial statement to the police. The record does not support that argument, either. Although the prosecutor asked the petitioner on cross-examination about facts she apparently garnered from Diaz's police statement, the prosecutor never mentioned to the jury the source of those facts. Nor were the contents of the statement themselves admitted into evidence. The petitioner could have denied the facts that the prosecutor gained from Diaz's statement or, as he did here, claimed a lack of memory. It was not immediately obvious to the jury that the prosecutor derived the facts used for questioning from Diaz's post-arrest testimony. Under these circumstances, the prosecution's use of the information from Diaz's post-arrest statement while cross-examining the petitioner did not violate the petitioner's right to confront the witnesses against him.

■ The petitioner also argues that his confrontation rights were violated when the prosecutor asked him if he observed Diaz fighting with one of the

victims during the altercation. The prosecutor's actual question was what the petitioner personally observed during the fight. A witness's testimony about his personal observations of an event is not an out-of-court statement and, thus, is not "hearsay." *United States v. Bursey,* 85 F.3d 293, 296 (7th Cir.1996). Therefore, the prosecution's questions to the petitioner about his personal observations during the fight did not violate his rights under the Confrontation Clause. The petitioner is not entitled to habeas relief on his second claim.

### E.

▇▇▇ The petitioner contends that the trial court improperly departed from the recommended sentencing range under the Michigan Sentencing Guidelines. It is well established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). The petitioner's argument that the trial court erred in applying the state sentencing guidelines raises an issue of state law only. It does not implicate any federal rights. "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), and a claim that the trial improperly departed from the state sentencing guidelines is not cognizable on habeas corpus review.

The petitioner also contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score his sentencing guidelines which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348,

147 L.Ed.2d 435 (2000), support his position. However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis,* 585 F.3d 1000, 1002 (6th Cir.2009). This Court is bound by that decision.

### F.

Because the Court concluded that the petitioner's first, second, and seventh claims are without merit, the petitioner is unable to show that the appellate counsel's failure to raise these claims on his appeal of right was deficient. Therefore, the petitioner cannot establish that he was denied effective assistance of appellate counsel and is not entitled to relief on his fifth claim. *See Coleman v. Metrish,* 476 F.Supp.2d 721, 733 (E.D.Mich.2007).

### IV.

The Court concludes that the majority of the petitioner's claims do not support his request for habeas corpus relief. However, an evidentiary hearing is required to resolve the claim that the petitioner was deprived of his right under the Sixth Amendment to a trial by a jury chosen from a fair cross-section of the community. Counsel will be appointed for the petitioner to assist in the presentation of that claim.

Magistrate Judge Charles E. Binder, to whom this matter is referred, has conducted hearings on other cases arising from prosecutions during the period when jury panels were selected using the defective system that resulted in the exclusion of population segments in Kent County that contained the highest concentration of minority citizens. The magistrate judge may incorporate the evidence from those hear-

ings, with the consent of the parties. The parties also are well advised to provide evidence, if they are able, of the composition of the petitioner's jury venire and the final trial jury. After the hearing, the magistrate judge should file a report and recommendation on the remaining issue raised in the habeas petition, that is, whether the petitioner's Sixth Amendment right to a jury drawn from a fair cross-section of the community was violated in this case.

Accordingly, it is **ORDERED** that claims one, two, three, four, five, and seven in the petition for a writ of habeas corpus are **DENIED.**

It is further **ORDERED** that the matter is referred to Magistrate Judge Charles E. Binder to appoint counsel for the petitioner, to conduct an evidentiary hearing on the issues raised in claim six of the petition, and to prepare a report and recommendation.